Jimmie Lee Smith, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 11, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MAC-PHAIL, DOYLE, COLINS and PALLADINO.

*Edith Benson,* with her, *Nancy S. Thomson,* for petitioner.

*Barry M. Hartman,* with him, *Jonathan Zorach* and *Michael D. Alsher,* Associate Counsels, and *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 30, 1985:

This unemployment compensation appeal, pursuant to argument specially ordered before the court en banc, requires that the court clarify the principles which govern this question:

When an unemployment compensation claimant has failed to reveal to the compensation authorities his earnings from part-time employment during the period for which he seeks compensation, on what basis and to what extent does that failure affect his entitlement to compensation and his liability to repay compensation already received?

Possible inconsistencies between *Schaeffer v. Unemployment Compensation Board of Review*, 77 Pa. Commonwealth Ct. 634, 467 A.2d 67 (1983), and *Rohrbach v. Unemployment Compensation Board of Review*, 69 Pa. Commonwealth Ct. 172, 450 A.2d 323 (1982), as noted in *Colello v. Unemployment Compensation Board of Review*, 89 Pa. Commonwealth Ct. 354, 361, n. 11, 492 A.2d 769, 772, n. 11 (1985), have prompted our concern.

Claimant Jimmie Lee Smith has appealed from an order of the Unemployment Compensation Board of Review affirming a referee's decision which found him ineligible for benefits under section 401(c) of the Unemployment Compensation Law,[1] and ordered recoupment of a fault overpayment in the amount of $2,773 under section 804(a) of that law, 43 P.S. §874 (a).

After finding that the claimant had a valid separation on November 11, 1982 from his former employment with Midland-Ross Corporation because of lack of work, the referee found that:

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §801(c).

3. As a member of the Army Reserves, the claimant is required to serve one weekend per month and two weeks of full-time training each year.

4. During the period at issue, the claimant attended weekend meetings for the Army Reserves and earned wages at the same time he was filing claims for benefits and he failed to report these earnings to the local office when filing those claims.

Because the referee concluded that the claimant's failure to report his Army Reserve earnings was unjustified, so that the compensation paid him should be regarded as a fault overpayment as to those particular weeks in which he pursued his military activity, the threshold problem is whether substantial evidence supports the findings of fact.

The claimant did not indicate his earnings from his reserve activity in his written application. The claimant testified that he orally mentioned his reserve affiliation at the time of his initial application and also told the authorities about his summer camp duty which would cause him to miss reporting for two weeks. The claimant also has relied on his tacit belief that he did not need to report those earnings because the monthly reserve earnings, if divided into weeks, in most instances would not have exceeded the weekly partial benefit credit of $76.

However, the referee, empowered to determine credibility, did not credit that testimony of the claimant. Instead, the referee found that the claimant "was aware of his duty to report all earnings from employment to the Office of Employment Security. . . ." The referee further found that the claimant had read and understood official Form UCP-1, which had informed the claimant concerning his duty to report all earnings, and that the compensation authorities did not

misinform the claimant concerning that duty. The claimant's alleged belief, concerning the immateriality of unreported earnings when their weekly amount is less than the partial benefit credit, falls short of justifying his continuing omission because there definitely were some weeks when even a weekly proportion of his reserve pay exceeded the partial benefit credit. The claimant's argument that the application's query as to service in the Armed Forces—an item which he checked—should be regarded as mutually exclusive from the other queries about working—which he did not check—also fails to be convincing.

Hence, substantial evidence supports the referee's findings, which the board adopted.

### Basis for Ineligibility

Given the stated findings, we proceed to examine the compensation authorities' view that ineligibility rests upon section 401(c), which provides that an eligible claimant is one who

(c) [h]as made *a valid application* for benefits . . . and has made a claim for compensation *in the proper manner* and on the form prescribed by the department. . . .

Where a claimant has failed to report part-time earnings, has he, as a consequence, fallen short of presenting *a valid application* or has he failed to make his claim *in the proper manner?*

We confirm that such a failing does not technically result in an invalid application, but it does constitute a failure to submit the claim in the proper manner. Withholding information literally does not invalidate the application because the Law defines a "Valid Application for Benefits," in section 4(w)(1), as an application on a departmental form by an unemployed individual "qualified under the provisions of section four hundred and one (a), (b) and (d)," and, as we

noted in *Colello*, 89 Pa. Commonwealth Ct. at 358, 492 A.2d at 771, neither that definition nor any of the listed subsections of section 401 invalidates an application because of withholding information. The listed subsections of section 401, to which the definition refers, relate only to (a) base year wages, (b) the duty to register for work, and (d) the ability to work and availability for suitable work; they do not mention the disclosure of information.

Thus, even though the application in such a situation remains valid, concealment of earnings from employment results in loss of eligibility because the claim has not been made "in the proper manner." That was the basis for disqualification we identified in *Amspacher v. Unemployment Compensation Board of Review*, 84 Pa. Commonwealth Ct. 447, 479 A.2d 688 (1984), as well as more recently in *Colello*.[2] Therefore, in *Rohrbach* we were correct in basing ineligibility on section 401(c), although not in placing reliance on the "valid application" language of that section.

Accordingly, ineligibility in this kind of case does not rest, as *Schaeffer* stated, upon the penalty-weeks section 801(b), 43 P.S. §871(b), which provides that a claimant who knowingly makes a false statement or

> knowingly fails to disclose a material fact to obtain . . . any compensation . . . may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment.
> . . .

That section's mention of "such . . . weeks of improper payments" does not constitute direct authority for in-

---

[2] *Colello* allowed compensation because the ultimate conclusion was that the claimant's unmentioned interest was a business investment rather than employment.

eligibility as to current compensation claims but is entirely incidental to the section's principal purpose, the imposition of penalty weeks with respect to subsequent claims made *after* the departmental determination imposing the stated penalty. Accordingly, we must now disapprove our statements in *Schaeffer*, 77 Pa. Commonwealth Ct. at 638, 467 A.2d at 69-70, which rested ineligibility in these situations on section 801 (b).

### *Extent of Liability for Fault Overpayment*

From the inapplicability of section 801(b) in this case, there follows the further conclusion that determination of the extent of liability for fault overpayment, with respect to current weeks of compensation, cannot rest upon the materiality criterion evoked by the reference to "material fact" in section 801(b). Because that penalty-weeks section does not govern liability for current overpayments, the present type of situation comes only under the overpayment provisions of section 804, 43 P.S. §874. That section deals with a claimant's liability if he has received "any sum as compensation under this act to which he was not entitled;" subsection (a) requires the claimant to repay when he has received compensation "by reason of his fault," and subsection (b)(1) subjects him only to liability for future deduction when he received the compensation "other than by reason of his fault. . . ."

*Rozanc v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 369, 366 A.2d 611 (1976), reiterated that "fault" under section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches, when shown—as we noted in *Amspacher*—by a finding of the referee or board concerning the claimant's state of mind. Here the referee's decision includes the finding so required, to the effect that the claimant was aware of his duty

to report all earnings and did not do so. Therefore, the authorities were correct in deciding that repayment is in order under the fault overpayment provision, section 804(a).

Section 804(a) requires repayment of "a sum equal to the amount so received," that is, equal to the compensation to which he was "not entitled." Similarly, the non-fault subsection (b)(1) subjects to future recoupment "such sum," to which he was "not entitled." With those terms, the section relates the amount of the repayment to absence of entitlement, *i.e.*, eligibility. In *Rohrbach,* where the unreported part-time employment activity took place in all of the benefit weeks, this court affirmed the administrative decision requiring repayment for all of the weeks in the period, regardless of the amount of earnings in any week. In *Schaeffer,* even though the unreported employment activity also spanned the entire period, this court looked instead to section 801(b) to deem the concealment to be not "material" in any week in which the earnings fell below the partial benefit credit, and accordingly relieved the claimant of the duty to repay with respect to those specific weeks (although leaving the possible imposition of other penalties to the board upon remand).

Here the referee and the board followed the fundamental axiom of the Unemployment Compensation Law that each claim week stands upon a separate and individual basis. *Frey v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 405, 451 A.2d 563 (1982). Because the compensated military reserve activity did not span all of the benefit weeks but only fell within one or two weeks each month, the bottom line of the referee's opinion was:

> Claimant's failure to report such income renders him ineligible to receive benefits *for the*

*compensable weeks during which such income was earned* under the provisions of Section 401 (c) of the Law.

That approach was sound. Section 401(c) is also pertinent to this issue because, given the principle of determining eligibility or qualification week by week, section 401(c) imposes disqualification with respect to each week in which the claimant performed compensated work and, upon re-registering for that week, failed to report it. A claimant is either eligible or not; a concept of partial eligibility would be incongruous. Thus, when ineligibility with respect to any week of compensation results from failure to apply for that week "in the proper manner," ineligibility is total, rather than dependent upon the relationship between the unreported amount and the partial benefit credit.

Assume that two different claimants, each with a weekly benefit amount of $190 and a partial benefit credit per week of $76 as here, withhold information about their earnings. Why should the one who has surreptitiously earned $75 receive the full $190 of benefits while the other, if he has earned $77, forfeits the full $190 amount for that week?

Even if the claimant in the special circumstances of this case may be regarded as "less" culpable than one who has worked in a more conventional private position, the straightforward concept of fault under section 804(a) does not support judicial creation of two gradations of fault, as would be required if we examined each week in the light of the partial benefit credit—an aspect of the compensation program which has no relationship to the matter of withholding information.

Moreover, under the referee's sound approach, the periodic nature of this claimant's military employment has itself limited the overpayment obligation, trig-

520

gered only as to those weeks in which compensated employment actually occurred.

In so deciding, and thus overruling our *Schaeffer* approach and result, this court remains mindful also that we should preserve every incentive which the Law contains to encourage full and open disclosure by a claimant.

Accordingly, the decision is affirmed.

### ORDER

Now, October 30, 1985, the order of the Unemployment Compensation Board of Review, decision No. B-223928, dated November 2, 1983, is affirmed.